[J-53-2016] [MO: Saylor, C.J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT DISTRICT

| | | |
|---|---|---|
| D.P. AND B.P., HIS WIFE, | : | No. 25 WAP 2015 |
| | : | |
| Appellants | : | Appeal from the Order of the Court of |
| | : | Common Pleas of Westmoreland |
| | : | County dated September 8, 2015 at No. |
| v. | : | 1750 of 2014-D. |
| | : | |
| | : | ARGUED:  April 5, 2016 |
| G.J.P. AND A.P., | : | |
| | : | |
| Appellees | : | |

**CONCURRING/DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED:  SEPTEMBER 9, 2016**

The majority's decision relies, in part, upon the fact that the "Parents have never sought court involvement in their family issues and are able to co-parent."  Maj. Op. at 12.   Our courts and our law should foster and encourage efforts such as those undertaken here by the parents to co-parent and to resolve differences amicably regarding their children.   Whether or not divorce is sought or contemplated, when consensus on child custody can be reached, judicial intrusion upon the fundamental right of fit parents to raise their children must be curtailed, lest that intrusion run afoul of our Constitution.

I join the learned majority's ruling invalidating the portion of 23 Pa.C.S. § 5325(2) that purports to authorize third party intrusion into decision-making by fit parents merely because those parents are separated.  I dissent respectfully from the majority's decision

to leave untroubled the remainder of that provision, which approves identical third party intrusion merely because otherwise fit parents happen to be divorced or divorcing.

The majority's distinction between separated and divorced parents permits it to distinguish Schmehl v. Wegelin, 927 A.2d 183 (Pa. 2007), without overruling it. The distinction is unconvincing. Here, the parents are separated, and agree regarding grandparent contact with the children. In Schmehl, the parents were divorced, and did not agree regarding grandparent contact. This is a thin divergence upon which to rest a differential and consequential classification of fundamental liberty interests. Suppose, for example, that the parents here did invoke court involvement, or do so next month or next year. What then? Application of the divorced/separated dichotomy becomes problematic, the distinction opaque. Every year, thousands of separated Pennsylvanians seek court intervention, whether in support, in custody, or in protection from abuse. Judicial involvement emphatically is not limited to divorcing or divorced parents. No divorce filing is required for entry into family court.

Try as I might, I cannot conclude that the statute's problem can be as neatly delimited as the Majority provides.[1] I find untenable and archaic Schmehl's holding that divorce, without more, suffices to permit outside intervention in the child-rearing decisions of otherwise fit parents, and its resulting decision to uphold the constutionality

---

[1]    The Majority cites the sound principle that, "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem." Maj. Op. at 20 (quoting Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 328 (2006)). Because I cannot discern a principled constitutional distinction between divorced and separated couples in the context of the right to parent (and a child's right to a parent), I must disagree with the Majority's severability analysis. Because the due process and equal protection clauses do not countenance discrimination between (or against) separated and divorced parents, the two prongs of Section 5325(2) are intertwined and inseparable. Under these circumstances, it is unlikely that the General Assembly would have intended to confer standing upon grandparents within the context of divorce while declining to do so within the context of separation. See 1 Pa.C.S. § 1925.

of 23 Pa.C.S. § 5325(2)'s predecessor statute in its entirety. As written, the statute discriminates between married and divorced parents, impermissibly and arbitrarily authorizing a heightened level of state or third party intervention with respect to the latter when there is no compelling reason to discriminate between the two categories. See Schmehl, 927 A.2d at 193 (Cappy, C.J., dissenting), and 195-96 (Baldwin, J., dissenting).

Marital status -- whether married, separated, or divorced -- is not simply a crude or rough proxy for parental fitness. It is no proxy at all. At this late date, I would think that our courts, if not our legislature, had moved beyond assumptions and biases against divorced parents, most of whom strive in the face of adversity to be the best parents they can be. To maintain any portion of Section 5325(2) is to deny societal reality, to consign roughly half the population to second-class status, and to stigmatize these citizens and their children. No portion of Section 5325(2) comports with the U.S. Constitution's due process and equal protection clauses, nor with Troxel v. Granville, 530 U.S. 57 (2000).